UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KEVIN L. WEBB, H99489,<br><br>        Plaintiff,<br><br>    v.<br><br>CALIFORNIA CORRECTIONAL<br>HEALTH CARE SERVICES, et al.,<br><br>        Defendant(s). | Case No. 17-cv-03066-CRB  (PR)<br><br>**ORDER GRANTING DEFENDANTS'<br>MOTION FOR SUMMARY<br>JUDGMENT**<br><br>(ECF No. 20) |

Plaintiff Kevin L. Webb, a state prisoner incarcerated at the Correctional Training Facility (CTF) in Soledad, California, filed a pro se complaint under 42 U.S.C. § 1983 alleging denial of recommended arthroscopic surgery, and later denial of recommended hip replacement, for a torn labrum (ring of cartilage attached to the hip socket) in his left hip. Plaintiff specifically alleges that in 2008 he "sustained" a "torn labrum to his left hip" and "was recommended for arthroscopic surgery to repair" it, but in 2011 and again in 2012 the surgery was denied.  Compl. (ECF No. 1) at 3.  In 2016, "due to the continued degeneration, a specialist recommended a [hip] replacement, rather than arthroscopic surgery," but in 2017 Dr. Bright, Chief Physician and Surgeon at CTF, denied the recommended hip replacement and instead recommended the previously-denied arthroscopic surgery.  Id.  Plaintiff seeks a court order for hip replacement, and money damages for denial/delay of recommended treatment.

Per order filed on August 4, 2017, the court found that plaintiff's allegations, when liberally construed, appear to state cognizable claims for relief under § 1983 for deliberate indifference to serious medical needs against the two named defendants – California Correctional Health Care Services (CCHCS) and Dr. Bright – and ordered the United States Marshal to serve them.

Defendants now move for summary judgment under Federal Rule of Civil

Procedure 56 on the ground that there are no material facts in dispute and that they are

entitled to judgment as a matter of law. Defendants argue that: (1) CCHCS is a state

agency entitled to Eleventh Amendment immunity and not a "person" amenable to suit

under § 1983; (2) plaintiff did not exhaust available administrative remedies as to Dr.

Bright, as required by the Prison Litigation Reform Act; and (3) Dr. Bright was not

deliberately indifferent to plaintiff's serious medical needs in violation of the Eighth

Amendment. Plaintiff has filed an opposition and defendants have filed a reply.

## DISCUSSION

### A.    Standard of Review

Summary judgment is proper where the pleadings, discovery and affidavits show

that there is "no genuine dispute as to any material fact and the [moving party] is entitled

to judgment as a matter of law." Fed. R. Civ. P. 56(a). Material facts are those which may

affect the outcome of the case. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248

(1986). A dispute as to a material fact is genuine if there is sufficient evidence for a

reasonable jury to return a verdict for the nonmoving party. Id.

The moving party for summary judgment bears the initial burden of identifying

those portions of the pleadings, discovery and affidavits which demonstrate the absence of

a genuine issue of material fact. Celotex Corp. v. Cattrett, 477 U.S. 317, 323 (1986).

Where the moving party will have the burden of proof on an issue at trial, it must

affirmatively demonstrate that no reasonable trier of fact could find other than for the

moving party. But on an issue for which the opposing party will have the burden of proof

at trial, as is the case here, the moving party need only point out "that there is an absence

of evidence to support the nonmoving party's case." Id.

Once the moving party meets its initial burden, the nonmoving party must go

beyond the pleadings to demonstrate the existence of a genuine dispute of material fact by

"citing to specific parts of materials in the record" or "showing that the materials cited do

not establish the absence or presence of a genuine dispute." Fed. R. Civ. P. 56(c). A

triable dispute of material fact exists only if there is sufficient evidence favoring the nonmoving party to allow a jury to return a verdict for that party. <u>Anderson</u>, 477 U.S. at 249. If the nonmoving party fails to make this showing, "the moving party is entitled to judgment as a matter of law." <u>Celotex</u>, 477 U.S. at 323.

There is no genuine issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. <u>Anderson</u>, 477 U.S. at 249. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted. <u>Id.</u> at 249−50.

## B. Analysis

CCHCS is entitled to dismissal because it is not a proper defendant. As a state agency or department under the jurisdiction of a state agency, CCHS is immune from suit under the Eleventh Amendment and not a person subject to suit under § 1983. <u>See</u> <u>Valdez v. Warden of PVSP</u>, No. 1:16-cv-01599-GSA-PC, 2017 WL 3705306, at *3 (E.D. Cal. Aug. 28, 2017) ("Because CCHCS is a state agency, it is entitled to Eleventh Amendment immunity from suit."); <u>Fletcher v. Cal. Corr. Health Care Servs.</u>, No. 16-cv-04187-YGR(PR), 2016 WL 5394125, at *2 (N.D. Cal. Sept. 27, 2016) ("Plaintiff has failed to name a proper defendant. He only named CCHCS, which is a state agency and therefore not a 'person' under section 1983.") (citing <u>Will v. Mich. Dep't of State Police</u>, 491 U.S. 58, 71 (1989)). Plaintiff's claims of deliberate indifference to serious medical needs may proceed only against his other named defendant, Dr. Bright.

Plaintiff claims that Dr. Bright was deliberately indifferent to his serious medical needs by denying recommended arthroscopic surgery, and later denying recommended hip replacement, for the torn labrum in his left hip. Defendants argue that Dr. Bright is entitled to summary judgment because plaintiff did not exhaust available administrative remedies as to Dr. Bright, and because Dr. Bright was not deliberately indifferent to plaintiff's serious medical needs. The court need not address defendants' non-exhaustion argument because it is satisfied that, on the evidence in the record, no reasonable jury could find that Dr. Bright's medical decisions regarding the preferred course of treatment

for plaintiff constituted deliberate indifference to plaintiff's serious medical needs in violation of the Eighth Amendment.

Prison officials violate the Eighth Amendment if they are "deliberate[ly] indifferen[t] to [a prisoner's] serious medical needs." Estelle v. Gamble, 429 U.S. 97, 104 (1976). A medical need is serious if failure to treat it will result in "significant injury or the unnecessary and wanton infliction of pain." Peralta v. Dillard, 744 F.3d 1076, 1081 (9th Cir. 2014) (en banc) (citation and internal quotation marks omitted). A prison official is "deliberately indifferent" to that need if he "knows of and disregards an excessive risk to inmate health." Farmer v. Brennan, 511 U.S. 825, 837 (1994).

A difference of opinion between a prisoner and a physician – or between medical professionals – concerning what medical care is appropriate does not amount to deliberate indifference. Snow v. McDaniel, 681 F.3d 978, 987 (9th Cir. 2012); Sanchez v. Vild, 891 F.2d 240, 242 (9th Cir. 1989). Even proof that a physician was negligent or committed medical malpractice is insufficient to make out a violation of the Eighth Amendment. Farmer, 511 U.S. at 835-36 & n.4; Toguchi v. Chung, 391 F.3d 1051, 1058, 1060 (9th Cir. 2004). To show deliberate indifference in violation of the Eighth Amendment, the prisoner-plaintiff must show that the course of treatment the doctors chose was medically unacceptable under the circumstances and that they chose this course in conscious disregard of an excessive risk to plaintiff's health. Snow, 681 F.3d at 988; Toguchi, 391 F. 3d at 1058; Jackson v. McIntosh, 90 F.3d 330, 332 (9th Cir. 1996).

Defendants argue that Dr. Bright is entitled to summary judgment because Dr. Bright was not deliberately indifferent to plaintiff's serious medical needs when, in his capacity as Chief Physician and Surgeon at CTF, Dr. Bright exercised medical judgment in evaluating the requests for medical services that plaintiff's treating physicians submitted. In support, they submit declarations and documentary evidence showing the following:

In 2008, plaintiff suffered a left hip injury which an MRI later confirmed resulted in a torn labrum. Bright Decl. (ECF No. 20-1) ¶ 5 & Ex. A (ECF Nos. 20-2 & 20-3) at AG MED 0015 (noting 2010 MRI confirmed labral tear). The labrum is a ring of cartilage

attached to the rim of the hip socket that cushions the hip joint and acts like a gasket to help keep the ball joint of the femur in place within the hip socket.  Bright Decl. ¶ 5.

On October 1, 2012, plaintiff had a consultation with orthopedic specialist Dr. Paik for worsening hip pain.  Bright Decl. ¶ 5 & Ex. A at AG MED 0014.  Dr. Paik recommended anti-inflammatory medication and the use of a cane rather than surgery.  Id.

On December 5, 2012, plaintiff saw primary care provider (PCP) Dr. Kohler complaining of hip pain "that is worsening" and "painful audible pops in joint with certain movements."  Ex. A at AG MED 0015.  Dr. Kohler noted that plaintiff had a recent consultation with an orthopedic specialist but that it appeared that the specialist did not have access to plaintiff's MRI report.  Dr. Kohler requested that plaintiff again be referred to an orthopedic specialist to determine whether plaintiff should undergo surgery.  Id.

On December 12, 2012, Dr. Bright reviewed Dr. Kohler's request for another referral to an orthopedic specialist.  Dr. Bright noted:

> Pt [patient] has pain after long walks.  He has full function.  See ortho exam dated 10-1-12.  At that time he [Dr. Paik] also diagnosed labral tear and did not recommend surgery.  He did want to review the MRI, please send it to him.

Id. at AG MED 0016.

On March 25, 2013, plaintiff again was evaluated by orthopedic specialist Dr. Paik.  Dr. Paik noted that plaintiff has the "clinical sign and symptom of early stage degenerative joint disease of the left hip secondary to shallow acetabulum and impingement of the hip joint."  Id. at AG MED 0079.  Dr. Paik recommended a new "MRI of the hip with contrast" to evaluate whether plaintiff should undergo surgery, but cautioned that "due to underlying pathology, arthroscopy may not resolve his problem due to the deformity of the hip joint."  Id.

According to plaintiff, he then received a new MRI of his left hip and on September 9, 2013 again was evaluated by Dr. Paik, "who noted, '. . . patient may require arthroscopic joint debridement although arthroscopic surgery may not completely eliminate the pain.'"  Pl.'s Aff. (ECF No. 21 at 15) ¶¶ 24, 26.

On January 15, 2014, plaintiff was evaluated at the orthopedic clinic by Drs. Avik and Drinhaus for continued left hip pain. Bright Decl. ¶ 9 & Ex. A at AG MED 0083–85. Advising that plaintiff try "some conservative measures at first," they provided him with a cane, a corticosteroid injection to his left hip and non-narcotic pain medication. Ex. A at AG MED 0084. Additionally, they consulted by telephone with Dr. Schlechter, an orthopedic surgeon, regarding possible left hip arthroscopic surgery for plaintiff. Id. Dr. Schlechter stated that he "would be available to consider [plaintiff] for surgery but would prefer a trial of non-operative management at first." Id.

On February 26, 2014, Dr. Lim-Javate, in her capacity as acting Chief Physician and Surgeon at CTF, approved PCP Dr. Lam's request for plaintiff to have left hip arthroscopy/osteoplasty labral repair. Bright Decl. ¶ 10 & Ex. A at AG MED 0034.

On May 7, 2014, plaintiff went to the orthopedic clinic for pre-op examination and told Drs. Basso-Williams and Schlechter that he was not interested in the surgery if there was a low chance of improvement. Bright Decl. ¶ 12. The doctors therefore decided that "[a]t this time we will not pre-op him for left hip arthroscopy," and recommended obtaining another MRI of the left hip and an MRI of the lumbar spine to rule lumbar pathology that might be related to new left groin pain. Ex. A at AG MED 0107.

On June 10, 2014, Dr. Lim-Javate denied the requests for additional MRIs and requested information as to why X-rays were not the more appropriate form of examination. Id. at AG MED 0037-38.

Plaintiff had received an X-ray of his lumbar spine on June 6, 2014 which showed that the "gross alignment of the spine is within normal limits." Id. at AG MED 0151. And an X-ray of his left hip and pelvis taken on January 22, 2015 showed "hip is normal in alignment without evidence of fracture, . . . or significant arthropathy." Id. at AG MED 0152-0153.[1] The January 22, 2015 X-ray did show evidence of prior left hip surgery. Id. at AG MED 0153.

---

[1]Arthropathy is a general term of disease of the joint; arthritis, for example, is a form of arthropathy. Bright Decl. ¶ 14.

On April 5, 2015, Dr. Posson, in his capacity as Chief Medical Executive at CTF, approved PCP Dr. Friederichs' request for physical therapy for plaintiff. Bright Decl. ¶ 15 & Ex. A at AG MED 0112.

On August 30, 2015, Dr. Friederichs requested a consultation with a specialist in Physical Medicine and Rehabilitation for plaintiff because plaintiff complained that he had developed increasing pain. Ex. A at AG MED 0117.

On August 31, 2015, Dr. Bright approved Dr. Friederichs' request for a consultation with a specialist in Physical Medicine and Rehabilitation for plaintiff. Id.

On January 7, 2016, Dr. Salas, a specialist in Physical Medicine and Rehabilitation, recommended MRIs of plaintiff's left hip and lumbar spine, and on January 24, 2016, Dr. Friederichs submitted requests for the two MRIs. Bright Decl. ¶ 18 & Ex. A at AG MED 0041-42.

On January 25, 2016, Dr. Bright approved the requests for the two MRIs. Bright Decl. ¶ 19 & Ex. A at AG MED 0041-42.

On February 12, 2016, plaintiff was assessed by Dr. Friederichs with the following medical conditions:

> 1. Labral tear of the left hip; 2. Lumbar disk disease with intermittent radiculopathy; 3. Status open reduction and internal fixation of the left femur fracture with subsequent removal of metallic components; 4. Hypertension near target; 5. Sleep apnea; 6. Healing abrasion over the bridge of the nose; 7. Seizure disorder under control. The patient last had a petite mal in 2011. His last grand mal seizure was in 2007; 8. Asthma, mild persistent; and 9. Chronic allergic rhinitis.

Ex. A at AG MED 0199.

On June 16, 2016, Dr. Friederichs submitted a request for a consultation with an orthopedic specialist for plaintiff. Dr. Friederichs attached a "progress note from 5/09/16" and new "L-Spine MRI report of 3/25/2016 and MRI left hip report of 2/2/2016." Id. at AG MED 0047.

On June 21, 2016, Dr. Bright approved the request for a consultation with an orthopedic specialist. Bright Decl. ¶ 21 & Ex. A at AG MED 0047.

On September 16, 2016, plaintiff was evaluated by orthopedic specialist Dr. French. Plaintiff reported that he had been diagnosed with a "left hip labral tear," and continues to have "pain and burning of the hip presenting as groin pain that radiates from the groin outward." Ex. A at AG MED 0132.  Dr. French assessed plaintiff as "a 50-year-old male with left hip pain, posttraumatic degenerative osteoarthritis," and concluded that arthroscopic surgery was "not a viable option due to his arthritis, his age, and the rehab protocol which likely would be unable to be accommodated at his facility." Id. at AG MED 0133.  Dr. French instead requested authorization to perform total left hip "arthroplasty," or replacement, on plaintiff.  Id.

On November 13, 2016, Dr. Friederichs submitted a request for total left hip replacement for plaintiff based on Dr. French's recommendation and plaintiff's decision "to go ahead with the procedure." Id. at AG MED 0049.

On November 18, 2016, Dr. Bright denied the request for total left hip replacement for plaintiff.  Bright Decl. ¶ 25 & Ex. A at AG MED 0050-51.

On January 8, 2017, Dr. Friederichs submitted a new request for total left hip replacement for plaintiff accompanied by a new "progress note from 1/04/2017." Ex. A at AG MED 0052-53.

On January 13, 2017, Dr. Bright denied the new request for total left hip replacement for plaintiff.  Id.

Dr. Bright declares under penalty of perjury that he denied the November 13, 2016 and January 8, 2017 requests for total left hip replacement for plaintiff "because in my medical judgment it was not the appropriate procedure" for plaintiff.  Bright Decl. ¶ 25.

> First, [plaintiff's] X-rays from January 22, 2015 showed no arthropathy.  Second, Dr. French recommended hip replacement because he believed that [plaintiff] had degenerative osteoarthritis.  However, [plaintiff] does not have osteoarthritis, he had a labrum tear.  Moreover, an entire hip replacement is much riskier for a patient with [plaintiff's] other medical conditions than the limited arthroscopic surgery for labrum tear.

Id.  As Dr. Bright put it, plaintiff "needs his labrum repaired, not a total hip."  Ex. A at AG

MED 0055. "Please consider putting in a request for labrum repair," he added.  Id.

On April 1, 2017, Dr. Bright transferred from CTF to Salinas Valley State Prison (SVSP).  Bright. Decl.  ¶ 2.

Based on the facts set forth above, no reasonable jury could find that Dr. Bright was deliberately indifferent to plaintiff's serious medical needs.  Dr. Bright never personally treated plaintiff.  Dr. Bright's involvement in plaintiff's medical care was limited to evaluating some of the requests for medical services that plaintiff's physicians submitted.  But on the facts set forth above, no reasonable jury could find that Dr. Bright's medical judgment regarding the requests for medical services and preferred course of treatment for plaintiff constituted deliberate indifference in violation of the Eighth Amendment.

Plaintiff claims that Dr. Bright was deliberately indifferent to his serious medical needs because Dr. Bright denied some of plaintiff's physicians' earlier requests for arthroscopic surgery.  But it is well established that a difference of opinion between medical professionals concerning what medical care is appropriate does not amount to deliberate indifference.  See Snow, 681 F.3d at 987; Sanchez, 891 F.2d at 242.  To show deliberate indifference, plaintiff must show that Dr. Bright's decisions regarding the earlier requests for arthroscopic surgery were medically unacceptable under the circumstances and that he made them in conscious disregard of an excessive risk to plaintiff's health.  See Snow, 681 F.3d at 988; Toguchi, 391 F. 3d at 1058; Jackson, 90 F.3d at 332.  Plaintiff does not.  After all, the evidence in the record makes clear that most of the orthopedic specialists who evaluated plaintiff earlier on—including Drs. Paik, Avik, Drinhaus and Schlechter—preferred or considered non-operative measures.

Plaintiff also claims that Dr. Bright was deliberately indifferent to his serious medical needs because Dr. Bright denied plaintiff's physician's later requests for hip replacement and instead then recommended the previously-denied arthroscopic surgery.  But the record makes clear that Dr. Bright's denial of plaintiff's PCP's November 2016 and January 2017 requests for hip replacement were based on Dr. Bright's medical judgment that a hip replacement was not the appropriate procedure for plaintiff.  Among

9

other things, Dr. Bright determined that Dr. French had recommended hip replacement because Dr. French incorrectly had assumed that plaintiff had degenerative osteoarthritis, and that hip replacement would be much riskier for a patient with plaintiff's other medical conditions than the limited arthroscopic surgery for labrum tear. Despite his assertions to the contrary, plaintiff has not set forth any probative evidence for a reasonable jury to find that Dr. Bright's November 2016 and January 2017 decisions denying hip replacement in favor of arthroscopic surgery were medically unacceptable under the circumstances and made in conscious disregard of an excessive risk to plaintiff's health. See Snow, 681 F.3d at 988; Toguchi, 391 F. 3d at 1058; Jackson, 90 F.3d at 332. That a different physician could/can come out differently on whether hip replacement or arthroscopy was/is the preferred course of treatment for plaintiff does not compel a different conclusion. See Snow, 681 F.3d at 987 (difference of opinion between medical professionals concerning what medical care is appropriate does not amount to deliberate indifference); Sanchez, 891 F.2d at 242 (same).

Dr. Bright is entitled to summary judgment on plaintiff's claims of deliberate indifference to serious medical needs as a matter of law. See Celotex, 477 U.S. at 323.

## CONCLUSION

For the foregoing reasons, defendants' motion for summary judgment (ECF No. 20) is GRANTED.

**IT IS SO ORDERED**.

Dated: October 4, 2018

CHARLES R. BREYER
United States District Judge

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

KEVIN L. WEBB,

             Plaintiff,

      v.

CALIFORNIA CORRECTIONAL
HEALTH CARE SERVICES, et al.,

           Defendants.

Case No. 3:17-cv-03066-CRB

**CERTIFICATE OF SERVICE**

      I, the undersigned, hereby certify that I am an employee in the Office of the Clerk, U.S. District Court, Northern District of California.

      That on October 4, 2018, I SERVED a true and correct copy(ies) of the attached, by placing said copy(ies) in a postage paid envelope addressed to the person(s) hereinafter listed, by depositing said envelope in the U.S. Mail, or by placing said copy(ies) into an inter-office delivery receptacle located in the Clerk's office.

Kevin L. Webb ID: H-99489
Correctional Training Facility BW-137L
P.O. Box 689
Soledad, CA 93960

Dated: October 4, 2018

                         Susan Y. Soong
                         Clerk, United States District Court

                         By:_____
                         Lashanda Scott, Deputy Clerk to the
                         Honorable CHARLES R. BREYER